NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KEVIN MARTIN, *Appellant*.

No. 1 CA-CR 22-0140
FILED 11-21-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-105324-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

H O W E, Judge:

¶1        Kevin Martin appeals his sentences for fraudulent schemes and artifices, forgery, theft, and theft of means of transportation. He argues that the trial court erred by considering his lack of remorse at sentencing. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In July 2019, Martin used fraudulent checks to purchase gold coins from two separate gold sellers, X Brokerage and Y Brokerage,[1] for $29,300 and $29,240. When the checks did not clear, the sellers refused to provide Martin with the coins. That same month, Martin used two fraudulent checks to purchase gold coins from a third gold seller, Z Brokerage, for a total of $93,600. Martin had already left with the coins when the checks came back as fraudulent.

¶3        A Z Brokerage representative contacted the police, who set up an undercover operation, asking Martin to come back and buy more gold coins. Martin returned and attempted to purchase coins using another fraudulent check for $47,580. After officers arrested Martin, they searched his vehicle and home. Officers found journals, checkbooks, and documents consistent with fraudulent activity. They never located the stolen coins.

¶4        After Martin had been arrested and released, he attempted to purchase gold coins and bars from Y Brokerage in December 2019 using a fraudulent check for $226,451. He later went to its store and left documents stating his intent to buy additional coins, submitting another fraudulent check for $230,000 to replace the initial check. Suspecting fraudulent activity, a Y Brokerage representative declined Martin's offer and contacted police officers.

¶5        During the same period, Martin used a fraudulent check to purchase a luxury vehicle from a dealership for $416,971.42. The dealership

---

[1]        We use pseudonyms to protect the privacy of the victims.

shipped the vehicle to Martin before processing the check. When the check did not clear, a dealership representative contacted police and attempted to retrieve the vehicle from Martin's home. Martin refused to speak, and shut the door. Later, officers observed Martin attempting to abandon the vehicle a few blocks from his home. Officers recovered the vehicle and searched Martin's home, finding additional notes, checkbooks, and documents consistent with fraudulent activity.

¶6        The State charged Martin with one count of fraudulent schemes and artifices, a class 2 felony, seven counts of forgery, class 4 felonies, two counts of theft, class 2 felonies, and one count of theft of means of transportation, a class 3 felony.[2] The jury found Martin guilty of all counts, and found aggravating factors applied. As relevant here, for one count of theft and the count of theft of means of transportation, the jury found Martin took property worth an amount sufficient to be an aggravating factor and he committed the offenses for pecuniary gain. *See* A.R.S. § 13–701(D)(3), (7). For the same count of theft, the jury also found Martin's conduct caused Z Brokerage to suffer harm. *See* A.R.S. § 13–701(D)(9).

¶7        Before sentencing, the probation department submitted a presentence report that recommended "an extensive prison term," including consecutive sentences, based on Martin's history of committing financial crimes, multiple dates of offense, and the risk he poses to the community. The report noted that a Z Brokerage representative recommended consecutive sentences be imposed because Martin "thinks he is above the law" and caused the business significant harm.

¶8        At sentencing, the trial court found that Martin's prior felony convictions, all of which involved fraud or forgery-related offenses, exposed him to the category-two repetitive offender sentencing range. *See* A.R.S. § 13–703(B). The State recommended the court impose presumptive sentences with two counts run consecutively based on Martin's criminal history and the repetitive nature of the offenses. The State asked the court to consider Martin's demeanor, arguing that "[h]e has shown no remorse for anything that has happened in this case." Without objecting to the State's remarks, Martin argued his mental health issues constituted a mitigating factor. He did not point to a specific diagnosis or present documentation from a mental health provider. Martin added that he had "some support" from a girlfriend and the offenses did not involve violent

---

2        The trial court granted the State's motion to dismiss two additional counts of forgery, class 4 felonies.

conduct. A Z Brokerage representative gave a victim impact statement, characterizing Martin as a "professional con man" who "knew full well what he was doing." The representative asked that Martin be harshly punished for the "devastating" harm he inflicted on the business.

¶9            In pronouncing sentence, the trial court stated that it considered the aggravating factors the jury found. The court addressed Martin's proposed mitigation, declining to consider his mental health issues as a mitigating factor. The court noted that Martin "may have mental health issues, but his conduct is egregious" and he committed the offenses "with knowledge of his behavior." The court pointed to the "methodical" and intentional nature of the offenses, finding that Martin still harmed the community even though he did not engage in violent conduct. The court noted that Martin's prior felony convictions were "similar in nature in terms of defrauding people or agenc[ies]. He knows exactly what he's doing. He intended to, and his behavior is unacceptable. He clearly has no remorse." After making this comment, the court clarified that Martin "had every right to go to trial. He chose to do that. That's perfectly fine. The [c]ourt would never [hold] that against any defendant [for] a choice to go to trial, but his behavior as evidenced through the trial, just shows his willing intentional participation in this kind of conduct."

¶10           The trial court found a "lengthy period" of imprisonment appropriate based on Martin's criminal history, the seriousness of the offenses, and the harm to victims. The court imposed a term of imprisonment slightly "greater than the presumptive" for one count of theft, and presumptive terms of imprisonment for all remaining counts. The court ordered the sentences in all counts to run concurrently except the sentence for the count of theft of means of transportation, which the court ran consecutively, for a total of 16.5 years' imprisonment. Martin timely appealed.

**DISCUSSION**

¶11           Martin argues that the trial court erred by considering his lack of remorse at sentencing. In particular, he contends that the court improperly used his lack of remorse to impose a "partially aggravated" sentence for one count of theft and a consecutive sentence for the count of theft of means of transportation. Relying on *State v. Vermuele*, Martin concedes that he did not object at sentencing but argues the issue should be reviewed de novo. 226 Ariz. 399 (App. 2011). We disagree. Unlike *Vermuele*, in which the defendant had no "clear procedural opportunity" to challenge his sentences below, Martin had the opportunity to object at any point after

the State commented on his lack of remorse in its sentencing recommendation. *Id*. at 402 ¶ 9. He could have raised this objection before, during, or after the court's pronouncement of sentence. Because Martin failed to raise this issue below, we review only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, 142 ¶¶ 12, 21 (2018); *State v. Trujillo*, 227 Ariz. 314, 317 ¶ 9 (App. 2011) (reviewing the court's unobjected-to consideration of lack of remorse at sentencing for fundamental error).

**¶12**     Generally, a criminal defendant's choice "not to publicly admit guilt is irrelevant to a sentencing determination" because "it would be irrational or disingenuous to expect or require one who maintains his innocence to express contrition or remorse." *State v. Hardwick*, 183 Ariz. 649, 656 (App. 1995). Absent the defendant's admitting guilt and raising the issue of remorse, the trial court must not consider lack of remorse as an aggravating factor. *Trujillo*, 227 Ariz. at 317–18 ¶¶ 12–15. This court will not, however, remand for resentencing when the record shows the "court would have reached the same result even without consideration of the factor." *Id*. at 318 ¶ 13 (citation and internal quotation marks omitted). Mere speculation that an improper factor may have affected the court's imposition of sentence is not enough to establish prejudice. *State v. Munninger*, 213 Ariz. 393, 397 ¶ 14 (App. 2006). Moreover, the trial court is allowed to "consider all evidence and information presented at all stages of the trial," including "the general moral character of the defendant," for the purpose of weighing the aggravating and mitigating factors. *State v. Suniga*, 145 Ariz. 389, 395 (App. 1985).

**¶13**     The record does not show that the trial court used Martin's lack of remorse to impose consecutive or aggravated sentences. The court addressed the aggravating factors found by the jury, all of which were proper, before considering Martin's proposed mitigation. The court declined to view Martin's mental health issues as a mitigating factor based on evidence that he methodically defrauded others for his own financial benefit. The court concluded that, given the complex and egregious nature of the offenses, Martin's potential mental health issues could not overcome the significant aggravating factors in this case. The court mentioned Martin's lack of remorse within the context of this discussion. Immediately after, the court clarified that this comment should not be interpreted as punishing Martin for exercising his right to trial. The court then referred to Martin's criminal history, the seriousness of the offenses, victim harm, and the risk he posed to the community, all of which were the focus of the sentencing recommendations from the probation department, the State, and a victim's representative.

¶14      The trial court's isolated comment did not become the focus of sentencing. *See Trujillo*, 227 Ariz. at 316, 318 ¶¶ 6, 14 (finding error when the court "repeatedly admonished" the defendant for his lack of remorse and failure to admit responsibility). The brief reference to Martin's lack of remorse did not extend past the court's rationale for rejecting the proposed mitigation. The court properly considered Martin's "general moral character," namely the gravity and frequency of his fraudulent activity, in discounting his mental health issues as a mitigating factor. *See Suniga*, 145 Ariz. at 395. We find no support in the record to suggest that the court would have imposed more lenient sentences absent the alleged error. *See Trujillo*, 227 Ariz. at 318 ¶ 13. Martin has thus failed to establish fundamental error requiring remand.

¶15      To the extent Martin asks that we overrule or disapprove of the holding in *State v. Dominguez*, 236 Ariz. 226 (App. 2014), we decline to do so here. That case involved the trial court's express consideration of the defendant's lack of remorse under the catch-all provision of A.R.S. § 13–701(D)(27). *Id*. at 231 ¶ 16. Nothing about our decision in the current case diverges from or conflicts with the holding in *Dominguez*.

¶16      Martin also argues that the State's comment on his lack of remorse constituted "prosecutorial misconduct." This argument is not meaningfully developed and is therefore waived. *See* Ariz. R. Crim. P. 31.10(a)(7)(A); *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

**CONCLUSION**

¶17      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA